**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**AHMED A. J.,**

     v.                                                                     3:18-cv-00197

**ANDREW M. SAUL,**[1]
**Commissioner of Social Security,**

                          **Defendant.**
_____

**THOMAS J. McAVOY,
Senior United States District Judge**

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiff Ahmed A. J. ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security ("Defendant" or "the Commissioner") denying his application for benefits. Plaintiff alleges that the Administrative Law Judge's decision denying his application was not supported by substantial evidence and was contrary to the applicable legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**II.    BACKGROUND**

    **a. Procedural**

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. The Clerk of Court is respectfully directed to amend the caption.

On April 17, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 5, 2013. The claim was denied initially on July 21, 2014. Thereafter, Plaintiff filed a written request for a hearing on September 25, 2014. On July 1, 2016, Administrative Law Judge Katherine Edgell ("ALJ") held a video hearing. Plaintiff appeared with his attorney and testified, and Louis P. Szollosy, an impartial vocational expert, also appeared and testified. The ALJ rendered an unfavorable decision on February 15, 2017. Plaintiff sought Appeals Council review of the ALJ's decision, which was denied on December 21, 2017, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

**b. The Hearing Before the ALJ**

    **1. Plaintiff's Testimony**

At the July 1, 2016 hearing, Plaintiff testified that he has lived in a second floor apartment with his cousin and another person for about five years (Tr. 27-28). The apartment is above a convenience store owned by his cousin (Tr. 35). Plaintiff testified that he is age 46, was born in Yemen, moved to the United States in 1992 when he was 18 years old, and has resided in United States ever since except for a visit to Yemen in 2012 (Tr. 28, 30). He attended school in Yemen but did not finish the high school program (Tr. 31). He can read and write in English, but "not by much" (Tr. 31). He is literate in Arabic (Tr. 31). He does not have a driver's license so he took a taxi to the hearing, and takes a taxi to his doctors' visits. (Tr. 29). He has not been able to work since 2013 when he had

2

back surgery.[2]

His most recent prior work was self-employment until 2012, selling cell phones in his brother's shop (Tr. 31). The two brothers had a partnership selling cell phones out of the shop but it ended before Plaintiff had surgery (Tr. 32). They were not making very much money in the partnership, only enough to live (Tr. 33). Plaintiff clarified that his job consisted of selling cell phones in a cell phone shop (Tr. 47). He worked by himself, not with his brother (Tr. 47). Basically, his job was a salesperson (Tr. 47). His brother did paperwork, ordering, and bookkeeping along with someone else (Tr. 47). Plaintiff did not supervise any employees and did not lift big boxes (Tr. 48). He went to the shop every day and stayed there all day (Tr. 48). He had a stool to sit down on (Tr. 49). Most of his day was spent sitting down waiting for a customer to come in, and then standing to attend to the customer (Tr. 49). He did the cell phone sales job from 2007-2011 or 2012 (Tr. 49).

In 2005-2006, Plaintiff owned a grocery store and had one or two employees and was the boss (Tr. 49-50). He did not have to unload heavy things to put them on shelves - the people who worked for him did that (Tr. 50). He was in charge of the money, standing at the cash register to assist the customers (Tr. 50). He owned another grocery store from 1998-2005, and opened another one from 2005-2007 (Tr. 50). In both cases he was mostly running the cash register (Tr. 50). When he owned the stores, he would be the one doing the books, ordering supplies, and paying bills (Tr. 51).

Plaintiff testified that he can no longer work because, after his back surgery, he cannot walk or stand very well (Tr. 33). He is also in a lot of pain, so he gets medicine from

---

[2]On February 25, 2013, Dr. Michael Cho performed a partial L4-L5 laminectomy, partial S1 laminectomy, and gross total excision of an intradural extramedullary mass.

Dr. Siddique and Dr. Nesheiwat (Tr. 33). The medicine helps with the pain so Plaintiff can walk (Tr. 33). He also gets shots sometimes from Dr. Nesheiwat (Tr. 33). He sees Dr. Nesheiwat every one to three months, depending on how he is feeling (Tr. 34). He still sees Dr. Siddique but not often, and he has not seen his surgeon, Dr. Cho, for a long time and thinks his office is closed (Tr. 34). Plaintiff brought a walker to the hearing and testified that he uses it all the time, and walks up and down stairs by holding the railing (Tr. 34-35). He is not currently in physical therapy and has tried to just use a cane but cannot stand using only a cane (Tr. 35). He tries to exercise, as his doctors have told him to walk a little, but he cannot do it (Tr. 38). He can stand 2-3 minutes, and can walk from the desk to the door of the hearing office before he has to sit down, a distance of about ten feet (Tr. 38-39). He has no limits on sitting but he cannot walk without the walker even in his apartment (Tr. 39). His doctor has tried to tell him not to use the walker so much, but he cannot stop using it (Tr. 39).

Plaintiff testified that after his surgery, he had gotten worse because now he cannot walk although he was able to walk before the surgery (Tr. 39). In the couple of years since the surgery, his inability to walk has been the same (Tr. 40). He gets numbness in the thighs down to the knees, and feels pain in his knees, in his feet, and in his calves (Tr. 40). After the surgery, his surgeon, Dr. Cho, told him the tumor had been removed and, after a check up, that it had not grown back (Tr. 41). Dr. Nesheiwat, Plaintiff's primary care physician for five years, sent him to Dr. Siddique, but Dr. Nesheiwat has been treating Plaintiff's pain over the previous five years (Tr. 41). Dr. Nesheiwat also treats Plaintiff for gout, for which he takes Allopurinol, and for diabetes, and sees him about once a month (Tr. 41- 42). Sometimes his medicines are changed; he had been taking Oxycodone, but

4

that was stopped; he takes it only when he has a lot of pain (Tr. 42). He sometimes has days when he feels better (Tr. 42), but Dr. Nesheiwat has given him shots in his arm when he has too much pain and cannot sleep (Tr. 42- 43). Sometimes when he is in pain and his doctor's office is closed, he goes to the Emergency Room for pain shots (Tr. 43). He sees Dr. Nesheiwat for pain about every two months (Tr. 43). He had been seeing Dr. Jindal for Gabapentin, but has not seen him in a long time (Tr. 44 ).

Plaintiff testified that he wakes up around 7 or 8 in the morning, has coffee which is delivered to him by someone from his cousin's store, and in the afternoon he goes back to sleep (Tr. 35). Other than that, he likes watching TV and does it all day (Tr. 35). He is not able to do his own laundry, and others cook meals for him (Tr. 36). He smokes cigarettes, but does not use alcohol or drugs (Tr. 36). He does not attend any community activities (Tr. 36-37), and does not socialize much with family or friends but sometimes they visit him (Tr. 37). He likes to watch YouTube or a movie on his phone (Tr. 38).

## 2. Vocational Expert ("VE") Louis P. Szollosy's Testimony

The VE Louis P. Szollosy testified that Plaintiff's past relevant work was as a sales representative for telephone services, DOT# 253.257-010, skilled, SVP 6, light but performed as sedentary (Tr.51-52). He was also a retail business owner, DOT# 185.167-046, skilled, SVP 7, light and performed as light (Tr. 52). Both jobs were performed long enough to be vocationally relevant (Tr. 52).

The ALJ asked the VE: "If I was to posit for you someone of this gentleman's vocational profile, who was limited to sedentary work, occasional stoop, squat. If seated, would have the opportunity to stand and stretch for a minute or two, say hourly. Could he perform his past work or any others?" (Tr. 52). The VE responded that such an RFC would

5

preclude the grocery store or retail store manager position because of exertion; it would also preclude telephone sales as described in the DOT, but not as Plaintiff performed it (Tr. 52-53). The VE then testified as follows based on the ALJ's questions:

> Q   Okay. And if he could perform no stoop or squat, would he be able to perform the past work as described?
>
> A   Yes, Your Honor.
>
> Q   Okay. If he could ....
>
> A   Let me just double, let me double check. Hold on. Let me get the definition here.
>
> Q   Okay.
>
> A   In sedentary work, stooping basically is required occasional. And if there was no stooping, it would actually not meet the definition of sedentary and, therefore, there would be no occupations.
>
> Q   Okay. And if a person could not sit, stand or walk in aggregate for eight hours, would they be competitively employable?
>
> A   No, Your Honor.

(Tr. 53).

Plaintiff's counsel then asked the VE the following questions:

> Q   Okay. When you, you stated just a moment ago that stooping is required occasionally for sedentary type of occupations.
>
> A   That's correct.
>
> Q   Do you squat stooping with [*sic*] the same thing as bending, bending at the waist?
>
> A   Well, that's the way it's defined. Stooping is bending at the waist.

(Tr. 53-54).

### c. The Medical Evidence

The Court adopts the parties' undisputed recitations of the medical evidence. *See* Pl. Br., Dkt. # 7, at 1-13; Def. Br., Dkt. # 8, at 1. The Court assumes familiarity with this evidence, and will set forth only that medical evidence material to the parties' arguments.

### d. The ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 13, 2015, his alleged onset date. At Step 2, the ALJ found that Plaintiff has the severe impairments of neurofibroma of the lumbosacral spine status post-surgical resection; degenerative disc disease of the lumbar spine; obesity; and gout. At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets of medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, noting that she especially considered the listings at §1.00. The ALJ next found that Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). She found that "[a]lthough the claimant is capable of lifting, carrying, pushing, and pulling ten pounds occasionally, sitting for six hours in an eight-hour workday and standing and walking two hours in an eight-hour workday, he can occasionally stoop and squat. He must have the opportunity to stand and stretch for one to two minutes on an hourly basis." Tr. 13. At Step 4, based on Mr. Szollosy's testimony, the ALJ found that Plaintiff could perform his prior relevant work as a sales representative, telephone services as actually performed, and that he was therefore not disabled.

### e. Issues on Appeal

Plaintiff contends:

  1. The job category cited by the vocational expert ("VE") as descriptive of Plaintiff's prior relevant work was incorrect, and the VE's erroneous testimony requires remand;

  2. The ALJ's failure to properly analyze the medical evidence is error that requires remand;

  3. The ALJ's failure to correctly determine Plaintiff's RFC is error that requires remand.

  The Commissioner opposes these contentions, and argues that the ALJ's decision should be affirmed.

### III. STANDARD OF REVIEW

  The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Shane v. Chater*, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. *See Tejada*, 167 F.3d at 773; *Balsamo*, 142 F.3d at 79; *Cruz*, 912 F.2d at 11; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are

binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990)(quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

## IV.    DISCUSSION

Although Plaintiff offers several reasons for remand, his challenge to the ALJ's RFC determination is dispositive of this matter.

The RFC is the most an individual can do despite his limitations. 20 C.F.R. § 404.1545; SSR 96-8p. It is assessed based on all the relevant medical and other evidence of record, and takes into consideration the limiting effects of all a claimant's impairments. In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources. *See* 20 C.F.R. §§ 404.1527(c), 404.1545(a)(3), 404.1546(c).

9

As indicated above, the ALJ found that Plaintiff had the RFC "to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a). Although the claimant is capable of lifting, carrying, pushing, and pulling ten pounds occasionally, sitting for six hours in an eight-hour workday and standing and walking two hours in an eight-hour workday, he can occasionally stoop and squat. He must have the opportunity to stand and stretch for one to two minutes on an hourly basis." (Tr. 13). In general, sedentary work requires the ability to lift up to ten pounds at a time, to lift and carry light objects occasionally, to stand and walk up to two hours per workday, and to sit for up to six hours of an eight-hour workday. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing 20 C.F.R. § 404.1567(a)); *DeRosia v. Colvin*, No. 16-CV-6093P, 2017 WL 4075622, at *20 (W.D.N.Y. Sept. 14, 2017)(same). Although Plaintiff's testimony that he currently sits most of the day provides substantial evidence for the sitting aspect of the sedentary criteria, there is very little evidence supporting the walking and standing criteria of sedentary work, or the stooping and squatting aspects of the RFC.

The record reflects that multiple requests were made to obtain medical source statements and treating source statements from Plaintiff's treating sources (Tr. 206-217, 218-237, 295-316, 335- 344). The only such statement available was provided by treating source Dr. Arefin Siddique, a specialist in physical medicine and rehabilitation. However, there was no indication in this statement of what Plaintiff could still do despite his impairments (Tr. 384-386). Consultative examiner Dr. Gilbert Jenouri is the only examining or treating medical source who rendered an RFC statement. The ALJ wrote with regard to Dr. Jenouri:

[T]he claimant was examined by Gilbert Jenouri, M.D., on July 10, 2014. The

10

> claimant reported lower back pain since his 2013 surgery that was sharp, 8/10 pain, radiated to the upper and lower extremities, and was precipitated with activity on a daily basis. Upon physically examining the claimant, Dr. Jenouri observed the claimant had an antalgic gait, could not walk on his heels and toes without difficulty, could not squat, and tilted forward while using a walker for pain and weight bearing, that was reportedly prescribed by a physician. The claimant had a reduced range of motion of the hips and lumbar spine, bilateral sciatic notch tenderness to palpation, and a positive straight leg raise bilaterally at twenty degrees in the seated position, and had a reduced range of motion of the bilateral knees that were tender to palpation. An x-ray of the lumbosacral spine displayed laminectomy from L4 to S1 and degenerative spondylosis at L3-L4 and L4-L5. Dr. Jenouri diagnosed the clamant with low back pain, gout, and bilateral upper and lower extremity radiculopathy. He opined the claimant had moderate to marked restriction with walking, standing, and sitting for long periods, bending, stair climbing, lifting, and carrying.

(Tr. 15)(record citations omitted).

The ALJ only gave "some weight" to Dr. Jenouri's opinion because "his assessments of moderate to marked limits are not specific assessments of function," and because "he made a one-time examination of the claimant, which noted the claimant's use of a walker, but subsequent records reveal greater ability to ambulate." Tr. 16. Nevertheless, the ALJ stated that "in light of his assessment and the various examinations in file, the claimant has been limited to a range of sedentary work with postural restrictions and the opportunity to change position." *Id.*

There is very little evidence indicating that Plaintiff could fulfill the sedentary work criteria of standing and walking for up to two hours per workday, and it is unclear how the ALJ reached the conclusion that Plaintiff could fulfill these functions. At the hearing, Plaintiff testified that he can only stand for 2-3 minutes at a time, can walk only about 10 feet before he needs to sit down, and that for five years he has been treated for and prescribed medication for the pain that inhibits his ability to walk. Plaintiff agues that no doctor has opined, nor have any treatment notes indicated, that Plaintiff can stand or walk

11

for up to two hours in an eight-hour workday.  The Commissioner responds that "Dr. Jenouri's finding that Plaintiff had moderate to marked limitations in walking and standing long periods is consistent with an RFC allowing for up to two hours of standing and/or walking." Def. Br. at 7.  The Commissioner's argument is rejected for two reasons.

First, the ALJ did not state that she was relying solely on Dr. Jenouri's finding that Plaintiff had moderate to marked limitations in walking and standing for long periods when she assessed the RFC of being able to perform sedentary work with the opportunity to stand and stretch for one to two minutes every hour.  Rather, it appears the ALJ reached the RFC conclusion also because Dr. Siddique observed Plaintiff walking with a cane, and because Dr. Jindal found in June 2014 that Plaintiff had a "normal gait, decreased sensation, but full strength.  Conservative pain management was advised." (Tr. 14). However, the ALJ does very little to equate these circumstances with Plaintiff's ability to stand or walk for up to two hours during an eight-hour work day. The ability to walk with a cane, or having a normal gait with full strength during a medical examination, does not necessarily establish the ability to stand or walk for two hours during an eight hour day. Without an explanation of how Plaintiff's ability to ambulate with a cane and/or having a normal gait during a physician's examination equates to the ability to stand and walk up to two hours a day, the Court is unable to conduct a meaningful review of whether the RFC is supported by substantial evidence. *See Otts v. Colvin*, No. 15-CV-6731-FPG, 2016 WL 6677192, at *4 (W.D.N.Y. Nov. 14, 2016)("Here, the ALJ did not explain how Otts could perform light work despite the fact that Dr. Persaud opined that she had a "moderate to marked" restriction for lifting, carrying, pushing, and pulling."); *Buchanan v. Colvin*, 15-CV-88S, 2016 WL 2729593, at *4 (W.D.N.Y. May 11, 2016) ("[B]ecause the ALJ failed to

provide any reasoning behind the RFC, or explanation as to how sedentary work is consistent with Plaintiff's moderate physical limitations, this Court is unable to conduct a meaningful review as to whether the RFC is supported by substantial evidence.").

Second, Dr. Jenouri's finding that Plaintiff had moderate to marked limitations in walking and standing for long periods does not, without more, provide support for the RFC. The use of the term "moderate to marked limitations" is vague, and without an opinion as to the amount of time Plaintiff could stand or walk in an eight hour day, it fails to provide substantial evidence supporting the RFC determination. *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded on other grounds*, 20 C.F.R. § 404.1560 ("While the opinions of treating or consulting physicians need not be reduced to any particular formula, Dr. Mancheno's opinion is so vague as to render it useless in evaluating whether Curry can perform sedentary work. In particular, Dr. Mancheno's use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that Curry can perform the exertional requirements of sedentary work.")(citing *Balsamo*, 142 F.3d at 81-82 (reversing denial of benefits on ground that Commissioner failed to introduce sufficient medical evidence that claimant could perform exertional requirements of sedentary work)); *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 487–88 (S.D.N.Y. 2018)("It is not obvious that a 'moderate' limitation on sitting translates into a set number of hours. For this reason, the Second Circuit has held that when compiling an RFC from the record, an ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information. . . . Therefore, Dr. Kaci's opinion, on its own, is

13

insufficient support for the ALJ's conclusion that Perozzi may function in a sedentary job.")(citing, *inter alia*, *Curry*, 209 F.3d at 123); *Garretto v. Colvin*, 2017 WL 1131906, at *21 (S.D.N.Y. Mar. 27, 2017) ("[The consulting physician's] use of the word 'moderate' is vague and provides no support for the ALJ's conclusion that plaintiff engage in these activities for six hours out of an eight hour day."); *Falk v. Colvin*, 15-Civ.-3863 (ER)(KNF), 2016 WL 4411423 at *6 (S.D.N.Y. Aug. 18, 2016)(consulting doctor's statement that the plaintiff "had a 'moderate limitation for sitting and standing for long periods of time'" was "too vague an opinion to be useful" with respect to plaintiff's ability to sit for six hours and stand and walk for two hours)*; Young*, 2014 WL 3107960, at *9 (conclusion by single consulting physician that claimant had undefined "moderate" limitations in sitting not substantial evidence for finding that claimant could perform sedentary work); *Richardson v. Astrue*, 2011 WL 2671557, at *12 (S.D.N.Y. July 8, 2011) (consulting doctor's vague conclusion that "[plaintiff's] ability to sit was 'mildly to moderately' impaired ... provides no support for ALJ's [ ] conclusion that [plaintiff] could perform sedentary work").

Plaintiff also argues, and the Commissioner does not refute, that Dr. Jenouri's assessment is the only time a medical source addressed Plaintiff's ability to squat, and he found that Plaintiff could not do so. Thus, the Court questions the inclusion in the RFC that Plaintiff could occasionally squat. Furthermore, Dr. Jenouri opined that Plaintiff had moderate to marked restriction with bending. The VE testified that sedentary work requires occasional stooping, that stooping is bending at the waist, and that a person who could not stoop would not meet the definition of sedentary work resulting in no occupations the person could fulfill. While Dr. Jenouri's restriction on bending may not be a specific

14

assessment of a function of sedentary work, the ALJ does not indicate where in the various other examinations in Plaintiff's file an assessment was made that Plaintiff could bend or stoop even occasionally.

The Court will remand the matter for further elaboration on the evidence the ALJ relied on in reaching the RFC determination. If necessary, the ALJ may have to contact Dr. Jenouri for further opinion as to the amount of time Plaintiff could performed the functions he assessed. *See Burgess*, 537 F.3d at 128 (Although a "claimant has the general burden of proving that he or she has a disability within the meaning of the Act, ... because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record.")(alteration, quotation marks, and citations omitted); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) ("Unlike a judge at trial, the ALJ has a duty to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'")(quoting *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011)); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)(The duty to develop the administrative record is present "[e]ven when a claimant is represented by counsel.")(collecting cases); *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) ("[T]he ALJ's general duty to develop the administrative record applies even where the applicant is represented by counsel ...."). Because the ALJ may reach a different RFC determination on remand, the Court declines to address the other challenges raised by Plaintiff on this appeal.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is

15

**GRANTED** and the Commissioner's motion for judgment on the pleadings is **DENIED**. The decision of the Commissioner is **VACATED** and this case is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a determination consistent with this Decision and Order.

**IT IS SO ORDERED.**

Dated: September 25, 2019

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge